ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.*
This attorney disciplinary matter arises from a rule to revoke probation filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Donald L. Mayeux.
UNDERLYING FACTS
In February, 1995, respondent was charged with one count of professional misconduct stemming from his failure to properly represent a client in a claim for increased Social Security benefits. The charges alleged respondent failed to provide competent representation, failed to act with due diligence, failed to keep his client properly informed and misled his client.
On June 7, 1996, this court suspended respondent for a period of nine months, with the entire suspension deferred. We further imposed a two year period of probation with conditions. In re: Mayeux, 96-0981 (La.6/7/96), 673 So.2d 1009.[1] In accordance *48 with the 12terms of probation, respondent and the ODC entered into a probation plan, and a probation monitor was appointed.
In the fall of 1997, while respondent was still on probation, the ODC received a complaint from a former client of respondent, alleging respondent converted her funds from a settlement check in a personal injury matter in April of 1994. Respondent denied any misconduct and, in support, turned over his banking and accounting records to the ODC.[2] The ODC’s investigation revealed respondent deposited the settlement funds in his operating account prior to paying the medical providers, although all parties were ultimately paid all funds to which they were entitled.
In the meantime, on May 15, 1998, the probation monitor submitted her final report stating that respondent had successfully complied with the terms of his probation and that the probation period would terminate, effective June 7,1998.[3]
DISCIPLINARY PROCEEDINGS
On May 28, 1998, one week before the termination of respondent’s period of probation, the ODC filed a rule to revoke probation based on the 1997 complaint.[4] Respondent |3filed a motion to dismiss the rule, claiming there was no basis for revocation.
After a hearing before a panel of the disciplinary board, the board issued its recommendation to the court suggesting respondent’s motion to dismiss be granted, and the ODC’s rule to revoke probation be denied without prejudice. In support, the board noted no misconduct took place during the period of probation. Further, it stated the ODC could seek immediate interim suspension for threat of harm if it believed the respondent posed a public threat.
DISCUSSION
It is undisputed that respondent successfully completed the terms of his probation to the satisfaction of the probation monitor. Under these circumstances, we agree with the board that it is not appropriate to penalize respondent by revoking or extending probation based on conduct which occurred prior to the imposition of probation, and which did not reflect on his behavior during the probationary period. Without passing on the merits of the allegations of misconduct raised in the rule to revoke probation, we find these allegations may be addressed in the context of new formal charges by the ODC, if appropriate.
DECREE
Upon review of the findings and recommendations of the disciplinary board, it is the decision of this court that the recommendation of the disciplinary board be adopted. Accordingly, the rule to revoke probation filed against respondent, Donald L. Mayeux, is dismissed without prejudice, reserving the *49 right of the Office of Disciplinary Counsel to file formal charges based on the conduct alleged in the rule to revoke probation.

 Victory, J. not on panel. Rule IV, Part 2, § 3.

. In addition to the imposition of the deferred suspension, this court imposed the following conditions to the two year probationary period:
(1) a probation monitor shall be appointed pursuant to Rule XIX, Appendix C, of the rules of this Court;
(2) the probation monitor shall have access to, and shall review, the files of respondent to insure that respondent is properly meeting all applicable pleading or other deadlines and maintaining proper and adequate communication with all clients;
(3) respondent shall attend not less than three hours of approved CLE training in law office and case management in calendar year 1996 and in calendar year 1997;
(4) respondent shall fully and completely cooperate with the probation monitor;
(5) there shall be no future violations by respondent of the rules of professional conduct;
(6) if any violation of the terms and conditions of probation are alleged to occur, respondent consents to the use of summaiy process, by rule to show cause, for the resolution of any such violation. After the expiration of the two year probationary period, and successful completion thereof, respondent shall be discharged from discipline.

. Essentially, respondent stated that he personally guaranteed his client’s health care providers over $19,000 in medical expenses and often gave his client money to hold her over until her settlement. After the settlement, the insurance carrier issued a check to the client, respondent and University Medical Center ("UMC”), which had a lien on the claim. After obtaining the signatures of all parties on the settlement check, the respondent provided his client and UMC with separate checks from his office operating account. Although funds were still owed to other health care providers, respondent's father, who handled the respondent’s books, placed the settlement check into the respondent’s operating account, since he was under the impression all parties had already been paid. However, each medical provider was still immediately paid its share of the settlement funds notwithstanding the deposit.

. In status reports provided to the ODC over a two year period, the probation monitor indicated respondent took substantial measures through the reorganizing and updating of the operation of his law practice to eliminate future misconduct. Respondent installed new computers for all office staff with tickler systems, respondent and his staff regularly reviewed and remained current with all cases, and respondent attended the requisite CLE courses. In October 1997, the monitor learned respondent had been diagnosed with cancer and undergoing chemotherapy; however, he continued to meet his professional obligations through the assistance of his law partner.

.The ODC also sought permission to file new formal charges. Although permission to file formal charges was granted in July, 1998, it appears formal charges have not yet been filed. The ODC also indicates it may be "considering a revision of proposed new charges to a more serious nature” involving conversion of client funds.